UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK DUANE BEESE,<br><br>    Petitioner,<br><br>vs.<br><br>RANDY VALLEY, IDOC ISCC Warden,<br><br>    Respondent. | Case No. 1:23-cv-00095-BLW<br><br>**INITIAL REVIEW ORDER** |

  Petitioner Derek Duane Beese (Petitioner) has filed a Petition for Writ of Habeas Corpus challenging his state court sentence. Dkt. 2. Federal habeas corpus relief is available to petitioners who are held in custody under a state court judgment that violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a).

  The Court is required to review each newly-filed habeas corpus petition to determine whether it should be summarily dismissed, amended, or served upon the respondent. *See* 28 U.S.C. § 2243. If "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court," the petition will be summarily dismissed. Rule 4 of the Rules Governing Section 2254 Cases.

**INITIAL REVIEW ORDER - 1**

Having reviewed the Petition, the Court preliminarily concludes that it is subject to dismissal on procedural grounds. Because the Court also concludes that the Petition is subject to denial on substantive grounds, there is no need to provide Petitioner with an opportunity to show an adequate legal excuse for the procedural default of his claims. The Court will permit Petitioner to respond to this Order before considering final dismissal with prejudice.

## REQUEST FOR APPOINTMENT OF COUNSEL

The Court first considers the request for appointment of counsel. There is no constitutional right to counsel in a habeas corpus action. *Coleman v. Thompson,* 501 U.S. 722, 755 (1991). A habeas petitioner has a right to counsel, as provided by rule, if counsel is necessary for effective discovery or if an evidentiary hearing is required. *See* Rules 6(a) & 8(c) of the Rules Governing Section 2254 Cases. In addition, the Court may exercise its discretion to appoint counsel for an indigent petitioner in any case where required by the interests of justice. 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B). Whether counsel should be appointed turns on a petitioner's ability to articulate his claims in light of the complexity of the legal issues and his likelihood of success on the merits. *See Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983).

Here, the Court finds that appointing counsel is not warranted. Discovery has not been authorized. No evidentiary hearing is set. Appointment of counsel would not aid in the decisionmaking process in this case, because there is no law that supports Petitioner's

contentions under the facts of this case. Therefore, Plaintiff's Motion for Appointment of Counsel will be denied.

## REVIEW OF PETITION

1. **Background**

In a criminal case in the Fourth Judicial District Court in Ada County, Idaho, Petitioner pleaded guilty to and was convicted of escape, a crime he committed while on probation or parole from a prior criminal conviction. Petitioner is contesting his sentence for escape— a unified sentence of five years of imprisonment, with the first two-and-a-half years fixed. He did not file a direct appeal to contest his sentence.

After judgment was entered, Petitioner filed a state court Rule 35 motion for reduction of sentence, arguing that his sentence should be reduced because he had recently discovered scientific evidence showing (1) that, generally, brain scan research shows that a person's brain is not fully developed until the age of 25, which means that immaturity may contribute to commission of a crime; and (2) that, particularly as to his own case, his crime may have been caused in part by "abnormal cell damage from drugs or drinking or an "abnormality of gray matter that still resides in the frontal lobe" because, even though he was 45, his brain perhaps "had yet to complete its pruning process as to allow full use of the 'frontal lobes." Dkt. 2-1, p. 10.

Based on his research, Petitioner asserted in his Rule 35 motion that "chronological age does not dictate an individual's level of social, emotional, [or]

physical maturity or dictate total ability to evaluate risky situations." Dkt. 2-1, p. 12. He asserted that, generally, people progress to mature levels of analyzing consequences "at various degrees and stages"—some as "young adults who are completely mature" and some as "old adults" who are not. *Id*. Petitioner argued that, in his own case, brain testing prior to sentencing was warranted because finding a brain anomaly would explain his history of "past impulsivity and … past unwillingness or inability to actively inhabit the necessary appropriate behavior." *Id*., p. 10. He argued: "In my situation, and given my poor history of ability to abort risky situations, it is my belief, that the now available clinical (MRI) scans of the brain would allow me to more fully evaluate my overall brain integrity." *Id*., p. 12. Petitioner theorized that, in his brain, "overproduced gray matter that over predominates in the frontal lobe … would still effect the 'seat of executive functions' planning, impulse, control, and reasoning." *Id*., p. 11.

While Petitioner mainly cited various research studies showing that human brain development is not complete until the mid 20s, *see* Dkt. 2-1, pp. 28-52, he also mentioned other researchers in his briefing, such as Jay Giedd of the National Institute of Mental Health, for the proposition that brain development takes much longer in some individuals, even extending into their 40s. *Id*., p. 16. Petitioner asserted that Giedd believes that a lifestyle of drinking and drugs may delay maturation of the brain. *Id*.

The state district court rejected Petitioner's arguments and denied his motion, finding and concluding: (1) "Mr. Beese "was 45 years old when he escaped, not twenty,'"

**INITIAL REVIEW ORDER - 4**

Dkt. 2-1, p. 54; (2) Mr. Beese did not submit "'any expert opinion opining as to his suspected neurological abnormalities and how they have affected his decision to escape", *id.*; and (3) Mr. Beese "was sentenced to a fixed term of only two and one-half years, not sixty" years. *Id.*

After the Rule 35 motion was denied, Petitioner filed an appeal through appointed counsel. Dkt. 2-1, pp. 56-80. The Idaho Court of Appeals affirmed the district court's decision on February 10, 2023. *See State v. Beese*, No. 49723, 2023 WL 1879320 (Idaho Ct. App. Feb. 10, 2023). The appellate court rejected Petitioner's claim, finding no abuse of discretion. *Id.* at *1.

The Idaho Supreme Court denied Petitioner's petition for review on February 28, 2023. Dkt. 2-1, pp. 81-82. Petitioner then filed this federal habeas corpus action.

## 2. Claims Raised in Federal Petition

Petitioner brings four claims. Dkt. 2. First, he asserts he had a Fifth Amendment due process right to have a neuropsychological evaluation and MRI done at public expense during sentencing proceedings; without this evidence, the sentencing judge did not have a complete view of all mitigating circumstances prior to sentencing. Second, on the same factual basis, Petitioner asserts a violation of his Sixth Amendment right to compulsory process to have a neuropsychologist evaluation by MRI at public expense during sentencing proceedings.

**INITIAL REVIEW ORDER - 5**

Third, Petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated when counsel failed to move the court to approve Petitioner's request for a neuropsychological evaluation by MRI of his frontal lobes to explore brain cell damage. Petitioner asserts that this error led to an unreliable and fundamentally unfair presentence investigation report (PSR) for consideration at the sentencing proceeding. Fourth, Petitioner brings a cumulative error claim under the Fifth and Fourteenth Amendments on all of the foregoing grounds.

In Plaintiff's Rule 35 Motion, he asserted a federal basis for his claims, arguing that he had the right to an MRI and an expert witness under *Britt v. North Carolina*, 404 U.S. 226 (1971), *Ake v. Oklahoma*, 470 U.S. 68 (1935), and *Griffin v Illinois*, 51 U.S. 12 (1956). Dkt. 2-1, p. 13. In Plaintiff's appellate briefing, drafted by appointed counsel, Plaintiff argued only that the state district court abused its discretion—a state law claim. Counsel relied on no federal basis for the claims presented on appeal (likely because there is no such recognized right, as explained below). *See* Dkt. 2-1, pp. 76-80.

3. **Discussion of Exhaustion of Remedies**

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526

U.S. 838, 845 (1999). Unless a petitioner has exhausted state court remedies, a federal district court generally is prohibited from granting relief on such a claim.

Based on the pleadings, attachments, and the Idaho Court of Appeals' opinion, the Court concludes that Petitioner has not exhausted his state court remedies. Petitioner never raised in the Idaho Supreme Court an argument that his sentence violates his federal rights under the Fifth, Sixth, or Fourteenth Amendments. As noted above, Petitioner grounded his state appellate court arguments on state law.

The procedural default does not prevent the Court from deciding against the petitioner on the merits of a claim. *Lambrix v. Singletary*, 520 U.S. 518 (1997); *cf. Franklin v. Johnson*, 290 F.3d 1223 (9th Cir. 2002) ("appeals courts are empowered to, and in some cases should, reach the merits of habeas petitions if they are, on their face and without regard to any facts that could be developed below, clearly not meritorious despite an asserted procedural bar"). Thus, where a procedural question presents a complicated question of law and is unnecessary to a disposition of the case, a court may proceed to the merits. *Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2003); *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir.1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted); *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Therefore, as the Court will explain, it has reviewed and will preliminarily deny

**INITIAL REVIEW ORDER - 7**

Petitioner's claims on the merits rather than further address the procedural issues. The Court will provide Petitioner a final opportunity to respond to this notice of intent to deny the claims before the Court dismisses the claims and enters judgment.

4. **Discussion of Merits**

   A. *Standard of Law Governing Habeas Corpus Review*

Federal habeas corpus relief may be granted where a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner challenges a state court judgment in which the petitioner's federal claims were adjudicated on the merits, Title 28 U.S.C.§ 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies, generally providing for deferential review of state appellate decisions. Under § 2254(d)(1), the source of clearly established federal law must come only from the holdings of the United States Supreme Court, *see Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999), and circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013).

If the state appellate court did *not* decide a federal claim, as here, then the federal district court reviews the claim de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (proper presentation of federal claim context); *see Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (explaining that courts can "deny writs of habeas corpus under §

**INITIAL REVIEW ORDER - 8**

2254 by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review, see § 2254(a)."). On de novo review, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

    **B.** *Due Process Standard of Law Governing Tools of Defense*

"[T]he State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt*, 404 U.S. at 227 (citing *Griffin v. Illinois*, 351 U.S. 12 (1956)). However, the United States Supreme Court "has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy." *Ake*, 470 U.S. at 77 (citing *Ross v. Moffitt*, 417 U.S. 600, 612 (1974)). Rather, "fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system.'" *Ibid*. To help federal district courts implement this principle, the United States Supreme Court has set forth a three-factor inquiry:

> The first is the private interest that will be affected by the action of the State. The second is the governmental interest that will be affected if the safeguard is to be provided. The third is the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided.

*Ake*, 470 U.S. at 77 (psychiatric expert context).

**INITIAL REVIEW ORDER - 9**

C. *Application of Law to Facts*

Here, the Court must apply the three *Ake* factors to determine whether the basic tools of an adequate sentencing defense include neuropsychological and physiological testing to help support a theory that a 45-year-old defendant has an underdeveloped or late-developed brain. First, because an individual defendant has a high interest in "diminish[ing] the risk of erroneous conviction" and in "the outcome of the State's effort to overcome the presumption of innocence", the first factor always weighs heavily in a defendant's favor. *Id*. at 78. Second, the State's concerns about the cost of providing expert witnesses to indigent defendants at public expense has not proven to result in a "financial burden so great as to preclude this assistance" and, hence, the second factor generally weighs in the defendant's favor, *id*. at 78-79; however, here, Petitioner's interests are not as heightened as in *Ake*, a capital sentencing case. Petitioner's contested sentence is relatively short—two to five years. If brain scans must be offered to any convicted felon between the ages of 18 and 45 to contest any length of sentence, the cost to the government would be massive.

The third factor, the probable value of the assistance sought, weighs against Petitioner. He seeks a brain scan and experts to testify about the scan, but has provided no other evidence to support his supposition that, if these tools were provided, it would produce favorable evidence. That Petitioner has committed various crimes since his 20s does not provide sufficient supporting evidence that a brain scan would produce

**INITIAL REVIEW ORDER - 10**

favorable evidence. The risk of error in the proceeding if such assistance is not offered also weighs against Petitioner. Nothing in the record supports Petitioner's lay opinion that a brain anomaly caused him to commit his most recent crime. Further, Plaintiff's narrow theory that a person at age 45 would still had some type of brain abnormality resulting from delayed brain development—even if supported by one researcher cited in Plaintiff's briefing—has no support in any of Plaintiff's own medical or psychological records.

No case law supports Petitioner's argument that the federal Constitution requires that he be provided with an MRI performed at public expense when his request is based solely on his suspicion that his past substance abuse has affected his brain development. *See* Dkt. 2-1, p. 54. Comparing *Ake*, this Court notes that the Constitution requires an indigent defendant "have state-furnished access to a psychiatrist's assistance on the issue of mental condition *only when* the defendant "has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial." 470 U.S. at 74. Mr. Ake's behavior at arraignment and in jail was so bizarre that the trial court on its own motion ordered him examined by a psychiatrist. *Id*. at 86. In addition, "a state psychiatrist shortly thereafter found Ake to be incompetent to stand trial, and suggested that he be committed." *Id*. Further, "the psychiatrists who examined Ake for competency described to the trial court the severity of Ake's mental illness less than six months after the offense in question, and suggested that this mental illness might have begun many years earlier."

*Id*. This and other evidence provided an adequate showing for the trial court to have determined that insanity was likely to be a significant issue at trial.

Unlike Mr. Ake, Petitioner did not make a preliminary showing that expert assistance and testing for brain development would be a significant factor at the criminal proceeding. *See Ake,* 470 U.S. at 82-83; *Moore v. State*, 889 A.2d 325, 339 (2005) (observing that *Ake* requires that "a defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial").

In its own research, this Court found no precedent holding that Fifth and Sixth Amendment fair trial/compulsory process precedent or Fourteenth Amendment due process precedent requires expensive brain testing and experts when a layperson, on his own, suspects that he has a brain anomaly. Had Petitioner's counsel requested funding for a brain scan and a brain expert, the state district court would not have granted the request—because it would have been based on mere speculation. In addition, expensive testing based on mere speculation would not have been justified where the maximum sentence was only five years.

Petitioner has not shown that any of his foregoing constitutional rights were violated. For these same reasons, Petitioner cannot show that his trial counsel performed deficiently in failing to make such a request, or that any prejudice resulted from the

**INITIAL REVIEW ORDER - 12**

failure. Therefore, all of Petitioner's claims, including his cumulative error claim, fail on the merits. Petitioner may file a response to this Order as designated below.

## ORDER

**IT IS ORDERED:**

1. Petitioner's request for appointment of counsel, contained in the Petition, is DENIED.

2. The Petition for Writ of Habeas Corpus (Dkt. 2) appears subject to denial on the merits. Petitioner may file a response to this Order within 21 days. Failure to take further action in this case will result in dismissal of this case with prejudice without further notice to Petitioner.

DATED: January 16, 2024

B. Lynn Winmill
U.S. District Court Judge